UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/05

------------------------------------------------------------x
                                          :

CAVU RELEASING, LLC,                 :            04 Civ. 7507 (RJH)

               Plaintiff,     :

        -against-          :          **MEMORANDUM OPINION
AND ORDER**

                                           :

CHARLES M. FRIES and FRIES FILM GROUP, :
INC.,
               Defendants.     :

                                           :
------------------------------------------------------------x

Plaintiff CAVU Releasing, LLC ("CAVU") brought this action against Charles

M. Fries and Fries Film Group, Inc. ("FFGI") (collectively "defendants"), asserting

claims under the Copyright Act, Lanham Act and New York unfair competition law.

Plaintiff alleges, *inter alia*, that defendants engaged in the unauthorized reproduction and

public broadcast of its copyrighted film, "The Holy Land," in Los Angeles, California

and at the Cannes Film Festival. Defendants have now moved to dismiss the complaint

based on lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of

Civil Procedure. Alternatively, defendants seek to dismiss the action based on improper

venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. §

1400, or transfer the action to the Central District of California pursuant to 28 U.S.C. §

1404. For the reasons set forth below, the Court denies defendants' motion to dismiss or

transfer in its entirety.

## BACKGROUND

The following allegations, set forth by the complaint, are liberally construed in the light most favorable to plaintiff and accepted as true for the purposes of defendants' motion to dismiss. The parties have also submitted affidavits in support of and in opposition to the motion.

CAVU is a New York limited liability corporation, with its principal place of business in New York, which finances, develops, produces and distributes independent films. (Compl. ¶¶ 1-2.) FFGI is a California corporation, with its principal place of business in California, that engages in foreign distribution of films. (*Id.* ¶ 3.) Fries is an officer of FFGI. (*Id.* ¶ 4.)

The complaint alleges that on or about March 1, 2004, CAVU was assigned the rights to the copyright for "The Holy Land" from Y2K Productions, Inc., which had earlier been assigned the copyright by the original owner, Eitan Gorlin. (*Id.* ¶ 7.) In July of 2003, CAVU premiered the domestic release of "The Holy Land" in New York. (Sergio Aff. ¶ 2.) According to plaintiff, Sidney Morse, who is Fries' father-in-law, allegedly attended the premiere and told Michael Sergio, the managing member of CAVU, that he was interested in acquiring the rights to "The Holy Land" on behalf of FFGI. (*Id.* ¶¶ 2-4.) Sergio and Morse allegedly entered into negotiations to see whether they "could make a deal for financing a broader distribution [of "The Holy Land"] than CAVU had originally planned." (*Id.* ¶ 3.) Plaintiff further alleges that Morse and Fries are partners and that Morse expressed his desire to do the deal through FFGI. (*Id.* ¶¶ 4, 7.)

Defendants assert that neither Morse nor his short-term loan business, Red Cloud Films, LLC ("Red Cloud"), were ever authorized to act on behalf of Fries or FFGI. (Morse Aff. ¶¶ 2-3.) However, defendants admit that at the very least, Morse introduced plaintiff to defendants. (*Id.* ¶ 5; Fries Aff. ¶¶ 7, 8.) Moreover, Red Cloud's web site includes a reference to FFGI, which states:

> Added Value: Fries Film Group. In an attempt to further your project, we offer entrée to the services of the Fries Film Group, located in San Fernando Valley. Their specialties are distribution and production. For more information, please call: 818-888-3052.

(Sergio Aff. ¶ 11.)

Plaintiff alleges that between the summer of 2003 and the spring of 2004, Sergio and Morse met in New York City several times to discuss the film, its distribution and the deal involving FFGI. (*Id.* ¶ 5.) According to plaintiff, Morse was the "money person" who would front the cash advance underlying the deal. (*Id.* ¶ 9.) Based on these conversations as well as prior occasions in which he borrowed money from Morse, Sergio believed that Morse "was acting as defendants' agent." (*Id.*)

At the same time, Sergio allegedly engaged in extensive negotiations with FFGI and Fries to work out "the practical details" in getting the documentation, film and audio tracks. (*Id.* ¶ 8; Compl. ¶ 8.) Plaintiff alleges that Sergio continued to communicate with Morse in New York during the spring of 2004 regarding the terms of the foreign distribution contract while negotiating with Fries regarding the technical items to be produced. (Sergio Aff. ¶ 13.) Sergio attested that "[d]uring the course of these negotiations we linked the issues of a cash advance and foreign distribution rights." (*Id.* ¶ 7.)

Around the end of April of 2004, plaintiff sent the 35mm master print of the film from New York City to Martini TechnoTrans in Cannes, France, in order to enable FFGI to arrange the screening of the film at the Cannes Film Festival in May of 2004. (Fries Aff. ¶ 9.) However, defendants assert that they never had possession of the master print, and that the film remains in the possession of Martini TechnoTrans. (*Id.* ¶¶ 9-10.)

Plaintiff further alleges that sometime in early May 2004, Morse – and not Fries – told Sergio that "we had a 'done deal.'" (Sergio Aff. ¶ 13.) It appears that no deal was in fact reached with respect to the distribution of the film. (Fries Aff. ¶ 16.) According to plaintiff, defendants made unauthorized copies of the film and displayed it in Los Angeles in the beginning of May, 2004, and at the Cannes Film Festival during May 11-23, 2004. (Compl. ¶¶ 10-11.)

## DISCUSSION

1.    Personal Jurisdiction

       *A.    12(b)(2) Standard*

The plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal citations omitted). Where the court holds an evidentiary hearing to resolve factual disputes, the plaintiff must establish jurisdiction by a preponderance of the evidence. However, where a court rules on a Rule 12(b)(2) motion based on pleadings and affidavits, the plaintiff is only required to make a *prima facie* showing of jurisdiction over the defendant. *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Whitaker*, 261 F.3d at 208.

In the present case, the Court had scheduled an evidentiary hearing. However, both parties subsequently requested that the motion to dismiss be determined on the basis of the papers submitted to date. While eventually, personal jurisdiction "must be established either at an evidentiary hearing or at trial," allegations submitted solely through competing affidavits, as in the present case, are "construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

B.        *Personal Jurisdiction Under New York Law*

In determining whether personal jurisdiction is appropriate, "the court must first look to the long-arm statute of the forum state, in this instance, New York." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (internal citations omitted). In addition to satisfying the requirements of New York's jurisdictional statute – N.Y. C.P.L.R. § 302 ("Section 302") – the court "must decide whether such exercise comports with the requisites of due process." *Id.*

The parties agree that the only basis on which the Court may properly exercise personal jurisdiction over defendants is Section 302(a)(1). (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Mem.") at 3; Horner Reply Aff. in Supp. of Mot. to Dismiss ("Horner Reply Aff.") ¶ 1.) Section 302(a)(1) states that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." Under Section 302(a)(1), a defendant "who transacts business in New York will be subject to personal jurisdiction in New York if the acts were purposeful and there

is a substantial relationship between those acts and the plaintiff's claim." *Semi Conductor Materials, Inc. v. Citibank Intern. PLC*, 969 F. Supp. 243, 246 (S.D.N.Y. 1997).

The primary issue, as narrowed by the parties, is whether defendants acted through Morse, as their agent, in negotiating aspects of the deal to distribute the film.[1] In determining whether an agency relationship exists for the purposes of Section 302, courts "have focused on the realities of the relationship in question rather than the formalities of agency law." *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (internal citations omitted). Specifically, the alleged agent "must have acted in the state for the benefit of, and with the knowledge and consent of, the non-resident principal." *Id.* (internal quotations omitted). While the principal need not exercise absolute control over the decisions or acts of the putative agent, *see id.*, a sufficient amount of control "may involve the ability of the principal to influence such acts or decisions by virtue of the parties' respective roles." *Scholastic, Inc. v. Stouffer*, No. 99 Civ. 11480 (AGS), 2000 WL 1154252, at *5 (Aug. 14, 2000); *see also CutCo*, 806 F.2d at 366 (sufficient control where agent and principal engaged in joint venture or joint partnership).

Plaintiff has alleged that Morse and Fries were acting as partners, and that Morse had expressed his desire to acquire the foreign distribution rights to the film "on behalf of FFGI." (Sergio Aff. ¶¶ 3, 7.) Indeed, the parties agree that Morse introduced plaintiff to Fries and FFGI in order to arrange the foreign distribution of "The Holy Land." According to plaintiff, Sergio and Morse "linked the issues of a cash advance and foreign distribution rights" during the course of these negotiations. (*Id.* ¶ 7.) Moreover, several

---

[1] In its memorandum, plaintiff "concedes that the individual defendant, Fries, is a resident of California and that the defendant corporation, FFGI, is a California entity that does not maintain an office in the State of New York. There are no allegations in the Complaint, or in Sergio's affidavit, that Fries himself came to New York to negotiate the unconsummated deal that underlies this action, or that the transaction itself would take place in or involve New York State. (Pl.'s Mem. at 3.)

of the discussions with Morse allegedly took place in New York although Sergio

concedes that none of the negotiations with Fries regarding the technical details of the

distribution took place in New York. (*Id.* ¶¶ 8, 13.) Sergio claims, however, that he

always believed that Morse was acting as FFGI's agent and that, shortly before the

Cannes Film Festival, Morse informed Sergio that they had a "done deal." (*Id.* ¶ 13.)

Both Morse and Fries vigorously deny that Morse acted as agent for FFGI or

sought to negotiate the terms of a distribution agreement between CAVU and FFGI.

(Morse Aff. ¶¶ 4-6; Fries Reply Aff. ¶ 3.) According to Morse, his only role was to

negotiate on behalf of his own company (Red Cloud Films, LLC) the terms of a possible

financing agreement with CAVU. (Morse Aff. ¶ 8.)

The Court cannot resolve the conflicting versions of the parties' negotiations in

the absence of an evidentiary hearing. However, accepting the plaintiff's allegations as

true and reading them in a light most favorable to plaintiff, the Court concludes that

plaintiff has adequately alleged that Morse was acting as FFGI's agent.

According to plaintiff, Morse was extensively involved in negotiations with

Sergio in New York for the foreign distribution rights to "The Holy Land." Plaintiff has

further alleged that Morse acted as Fries' partner and that Morse told Sergio that they had

a "done deal", thereby establishing an element of control over Morse by defendants with

respect to these negotiations. (Sergio Aff. ¶¶ 7, 13); *CutCo*, 806 F.2d at 366 ("Under

traditional agency law, joint participation in a partnership or joint venture establishes

'control' sufficient to make each partner or joint venturer an agent of the others.")

(internal citations omitted); *The Simian Line, LLC v. Shoreline Entertainment, Inc.*, Mo.

99 Civ. 2495 (JSM), 1999 WL 627441, at *2 (S.D.N.Y. Aug. 17, 1999) (finding that

corporate president's activities in New York established jurisdiction over defendant where corporation and defendant entered into joint venture). In resolving all doubts in favor of plaintiff, *A.I. Trade Finance, Inc.*, 989 F.2d at 79-80, the Court concludes that plaintiff's allegations fairly raise an inference that defendants were aware of Morse's actions with respect to negotiating certain terms of the foreign distribution deal, consented to those negotiations, exercised some degree of influence over him and stood to benefit from his actions. *CutCo*, 806 F.2d at 36. Whether plaintiff will ultimately succeed in establishing these facts by a preponderance of the evidence remains to be seen.

The remaining requirements of Section 302(a)(1) are also satisfied. Defendants allegedly engaged in extensive contract negotiations, meeting with Morse several times over the course of many months for the purpose of securing foreign distribution for the film. At one point, Morse allegedly told Sergio that they had a "done deal." Even though the negotiations did not result in an executed contract, it is well settled that contract negotiations in New York will satisfy Section 302(a)(1) "if the discussions substantially advanced or were essential to the formation of the contract or advanced the business relationship to a more solid level." *SAS Group, Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003) (internal quotations omitted) (citing cases) *Central Army Sports Club v. Arena Associates, Inc.*, 952 F. Supp. 181, 187 (S.D.N.Y. 1997) (business transactions sufficient for Section 302(a)(1) include "a contract negotiation indicating a party's 'purposeful invocation' of the laws of New York State."). Viewing the totality of these circumstances and the parties' conduct in New York, plaintiff has sufficiently alleged an "articulable nexus" between the contract negotiations and its

unfair competition claims. *See McGowan v. Smith*, 52 N.Y.2d 268, 272 (N.Y. 1981); *World Skating Federation v. International Skating Union*, 357 F. Supp. 2d 661, 665 (S.D.N.Y. 2005) (personal jurisdiction established under Section 302(a)(1) where the "cause of action would not exist without the New York activities of the defendant") (internal citations omitted); *The Simian Line*, 1999 WL 627441, at \*3 (finding that negotiations of film distribution agreement were sufficiently related to underlying cause of action for infringement where defendants claimed to be operating under the agreement for jurisdictional purposes).

Finally, defendants' negotiations through Morse indicate that they purposefully availed themselves of the privilege of conducting their business under New York law, so as to satisfy due process considerations. *See NW Direct Design & Mfg., Inc. v. Global Brand Marketing, Inc.*, No. 98 Civ. 4756 (LAP), 1999 WL 493348, at \*3 (S.D.N.Y. July 12, 1999) (presence of agents during negotiations in New York constituted purposeful availment). Accordingly, plaintiff has established a *prima facie* showing that personal jurisdiction over defendants is appropriate in New York.

II.  Venue

A.  *Motion to Dismiss for Improper Venue*

Defendants also assert that the case should be dismissed under Rule 12(b)(3) and 28 U.S.C. §1400(a) for improper venue. (Defs.' Mem. in Supp. of Mot. to Dismiss or Transfer ("Defs.' Mem.") at 3.) In evaluating a motion to dismiss for improper venue under Rule 12(b)(3), the court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Dolson v. New York State Thruway Authority*, No. 00 Civ. 6439 (RLC), 2001 WL 363032, at \*1 (S.D.N.Y. April

9

11, 2001). However, the plaintiff bears the burden of showing that venue is proper in the forum district. *U.S. Envtl. Prot. Agency v. Port Auth. of N.Y. & N.J.*, 162 F.Supp.2d 173, 183 (S.D.N.Y. 2001).

Section 1400(a) provides that a copyright action "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). A defendant "'may be found' wherever that person is amenable to personal jurisdiction." *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207, 215 (S.D.N.Y. 1996) (citing *Business Trends Analysis v. Freedonia Group, Inc.*, 650 F. Supp. 1452, 1456 (S.D.N.Y. 1987)). Accordingly, the motion to dismiss based on improper venue is denied for the same reasons set forth above in the context of the personal jurisdiction analysis.

### B.    Motion to Transfer to the Central District of California

Defendants alternatively seek to transfer the action to the Central District of California under 28 U.S.C. § 1404 even if venue is proper in the Southern District of New York. In support of their motion, defendants assert that the action should be transferred to California because Fries and the books, records and employees of FFGI are located there. (Defs.' Mem. at 3.) Moreover, defendants contend that the operative facts alleged in the complaint – e.g., the public broadcast of "The Holy Land" – occurred in Los Angeles, California. (Horner Reply Aff. ¶ 15.)

Section 1404 allows a district court to transfer any civil action to any other district where the action could have been brought for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). The preliminary inquiry is "whether the action sought to be transferred is one that 'might have been brought' in the transferee court." *Mattel, Inc. v. Robarb's, Inc.*, 139 F. Supp. 2d 487, 490 (S.D.N.Y.

2001) (internal citations omitted).  If the defendant meets that threshold determination,

courts have further examined factors such as:

> (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with governing law; and (8) trial efficiency and the interests of justice.

*Linzer*, 904 F. Supp. at 216 (citing cases).  "The burden of demonstrating the desirability

of transfer lies with the moving party, and in considering the motion for transfer, a court

should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and

convincing showing that the balance of convenience favors defendants' choice.'" *Id.* at

216 (quoting *Hubbell Inc. v. Pass & Seymore, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y.

1995)).  Ultimately, "motions for transfer lie within the broad discretion of the district

court and are determined upon notions of convenience and fairness on a case-by-case

basis." *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (internal

citations omitted).

As an initial matter, defendants have established that the action could have been

brought in the Central District of California where they are subject to personal

jurisdiction, thereby satisfying the threshold inquiry. *Linzer*, 904 F. Supp. at 215.

Moving then to the issue of whether transfer is appropriate, the Court notes that while the

alleged infringing broadcasts occurred in California and France, a substantial portion of

the contractual negotiations underlying the infringement allegedly occurred in New York.

In light of the fact that neither party discusses what sorts of proof or which witnesses will

be necessary in litigating this action, the Court sees no reason to disturb plaintiff's choice

of forum, particularly since it is defendants' burden to establish the propriety of

transferring the action through specific factual statements. *See Arch Speciality Ins. Co. v. Entertainment Specialty Ins. Servcs., Inc.,* No. 04 Civ. 1852 (RCC), 2005 WL 696897, at *8 (S.D.N.Y. March 24, 2005) ("A motion to transfer should include an affidavit containing detailed factual statements supporting the transfer.") (internal citations omitted); *Modern Computer Corp. v. Ma,* 862 F.Supp. 938, 948 (E.D.N.Y. 1994) ("The movant must support the application with an affidavit containing detailed factual statements relevant to why the transferee forum is more convenient, including potential principal witnesses expected to be called and a general statement of the substance of their testimony."). Indeed, the plaintiff's choice of forum will generally be afforded significant deference where the factors to be considered are equally balanced, the plaintiff is a resident of the forum district and the forum state has a material connection to the underlying events of the action. *Foot Locker Retail, Inc v. SBH, Inc.,* No. 03 Civ. 5050 (DBB), 2005 WL 91306, at *9 (S.D.N.Y. Jan. 18, 2005); *Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998).

Defendants have thus failed to satisfy their burden in showing that the balance of convenience favors transferring this action to the Central District of California, much less argue that they will be seriously prejudiced if the action remains in the Southern District of New York. While defendants assert that the proposed agreement contains a forum selection clause choosing California law, the parties never executed that agreement, and in any event, a forum selection clause is irrelevant to the venue analysis. *See GMAC Commercial Credit, LLC v. Dillard Dept. Stores, Inc.,* 198 F.R.D. 402, 405 (S.D.N.Y. 2001) ("The presence of a forum selection clause does not enter into [the statutory venue]

analysis.") Accordingly, the Court denies defendants' motion to transfer this action to the Central District of California.

III.     Conclusion

The Court denies defendants' motion to dismiss or transfer this action [3] in its entirety.

SO ORDERED

Dated: New York, New York
       August 11, 2005

                                                    Richard J. Holwell
                                                    United States District Judge